1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  SHARANYA MOHAN (NYRN 5027768)
   Assistant United States Attorney
4  450 Golden Gate Avenue
   San Francisco, California 94102-3495
5  Telephone: (415) 436-7198
   Fax: (415) 436-6748
6  sharanya.mohan@usdoj.gov

7  Attorneys for United States of America

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,          )        CASE NO.
                                       )
13          Plaintiff,                 )
                                       )
14      v.                             )        **COMPLAINT**
                                       )
15  DEBBY VINSON,                      )
                                       )
16          Defendant.                 )
                                       )
17  _____)

18

19          As and for its Complaint against Debby Vinson ("Defendant"), the United States of America, on

20  behalf of the Federal Emergency Management Agency ("FEMA") of the Department of Homeland

21  Security ("DHS"), alleges as follows:

22                            **BACKGROUND**

23          1.      From about October 8, 2017 through October 31, 2017, wildfires burned portions of the

24  state of California.

25          2.      On October 10, 2017, the President of the United States issued a major disaster

26  declaration (DR-4344) for several counties in California, including Mendocino County.  In response to

27  the disaster and at the request of the state of California, FEMA provided direct housing assistance to

28

COMPLAINT                              1

1  certain households affected by the disaster in the form of temporary manufactured housing units, or

2  "THUs," including to Defendant.

3      3.    As discussed herein, a federal statute expressly limits how long FEMA may provide

4  direct housing assistance upon an emergency declaration.

5      4.    The statutory period of assistance ended on July 10, 2019 for all occupants in the THU

6  program for DR-4344, and was not further extended.  Consequently, Defendant's right to occupy the

7  THU ended not later than July 10, 2019.

8      5.    Despite several notices and other efforts from FEMA to inform Defendant that she needs

9  to surrender the THU, Defendant has failed to relinquish possession of the THU.

10      6.    The United States is entitled to (a) a declaratory judgment that Defendant must surrender

11  possession of the THU to the United States, (b) an injunction requiring her to do so, (c) to any extent

12  that she does not do so promptly, a writ of assistance from law enforcement officers for repossession of

13  the THU, and (d) miscellaneous related relief.

14                        **PARTIES**

15      7.    The United States brings this action on behalf of its agency, FEMA.

16      8.    Defendant is an individual who is the holder of a revocable license to occupy a THU that

17  has expired.  Defendant resides at 4211 Jenkins Road, Redwood Valley, CA  95470.

18                   **JURISDICTION AND VENUE**

19      9.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331

20  because the claims presented herein arise under the Robert T. Stafford Disaster Relief and Emergency

21  Assistance Act, 42 U.S.C. §§ 5121 *et seq.*, as amended by Pub. L. 103-181, Pub. L. 103-337, and Pub.

22  L. 106-390, October 30, 2000, 114 Stat. 1552 – 1575, ("Stafford Act"), including 42 U.S.C. § 5157(b)

23  ("Whenever it appears that any person has violated or is about to violate any provision of this chapter,

24  . . . the Attorney General may bring a civil action for such relief as may be appropriate . . . . in an

25  appropriate United States district court.").

26      10.    This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1367

27  because certain of the claims presented herein are so related to claims under the Stafford Act that they

28  form part of the same case or controversy under Article III of the United States Constitution.

1    11.    This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1345

2    because the United States has commenced it.

3    12.    Venue is proper in this district under 28 U.S.C. § 1391(b) as Defendant resides in this

4    district.

5                              **INTRADISTRICT ASSIGNMENT**

6    13.    The conduct at issue occurred in large part in Mendocino County.

7                      **STATUTORY AND REGULATORY FRAMEWORK**

8    14.    In response to a disaster, under the Stafford Act, the President may provide eligible

9    applicants with either financial assistance (*e.g.*, funds to pay rent) or direct housing assistance (*e.g.*, a

10   THU).

11   15.    FEMA is the agency of the United States of America responsible under the Stafford Act

12   for the coordination of Federal disaster relief efforts.

13   16.    FEMA retains discretion to designate the appropriate types of temporary housing

14   assistance based on "considerations of cost effectiveness, convenience to the individuals and households

15   and the suitability and availability of the types of assistance."  44 C.F.R. § 206.110(c); *see* 42 U.S.C. §

16   5174(b)(2)(B).

17   17.    To qualify for temporary housing assistance, a disaster applicant must demonstrate, *inter*

18   *alia*, that his or her primary residence has been rendered uninhabitable by a major disaster and that the

19   applicant is unable to meet his/her housing needs through other sources, such as insurance.  42 U.S.C. §

20   5174(b); 44 C.F.R. § 206.110(h); 44 C.F.R. § 206.113(b)(1); 44 C.F.R. § 206.113(b)(6).

21   18.    The Stafford Act limits how long FEMA may provide temporary direct housing

22   assistance:

23          The President *may not provide* direct assistance under clause (i)
            [temporary housing units] with respect to a major disaster after the end of
24          the *18-month period* beginning on the date of the declaration of the major
            disaster by the President, except that the President may *extend* that period
25          if the President determines that due to *extraordinary circumstances* an
            extension would be in the *public interest*.
26

27   42 U.S.C. § 5174(c)(1)(B)(iii) (emphasis added).

28

COMPLAINT                                    3

19.     Likewise, the implementing regulations for this statute provide, "FEMA may provide assistance under this subpart for a period not to exceed 18 months from the date of [the Presidential] declaration [of a disaster].  The Assistant Administrator for the Disaster Assistance Directorate may extend this period if he/she determines that due to extraordinary circumstances an extension would be in the public interest."  44 C.F.R. § 206.110(e).

20.     FEMA is authorized by regulation to terminate direct housing assistance to individuals for reasons that include, but are not limited to, the following: (a) the permitted period of assistance expired and has not been extended; (b) adequate alternate housing is available to the occupant(s); (c) the occupant(s) obtained housing assistance through either misrepresentation or fraud; (d) the occupant(s) failed to comply with any term of the assistance agreement or other rules of the site where the unit is located; and (e) the occupant(s) does not provide evidence documenting efforts towards a permanent housing plan.  44 C.F.R. § 206.117(b)(1)(ii)(G).  In this case, the permitted period of assistance for all occupants expired and has not been extended.

## FACTUAL BASIS FOR CLAIMS

### The 2017 Wildfires, Residential Damage, and Resulting Disaster Declaration

21.     In response to the 2017 wildfires in the state of California, on October 10, 2017, the President of the United States declared a major disaster for several counties in California, including Mendocino County, the county where Defendant lived and, upon information and belief, continues to live.

22.     At the request of the state of California, and pursuant to the disaster declaration, FEMA provided direct housing assistance to certain households affected by the wildfires, in the form of THUs. FEMA provided a total of 263 THUs in the state of California in the aftermath of the 2017 wildfires.

23.     The ordinarily applicable 18-month time limit specified by the Stafford Act for temporary direct housing assistance connected with the 2017 wildfires ended on April 10, 2019.

24.     FEMA extended the applicable 18-month time limit specified by the Stafford Act for temporary direct housing assistance through July 10, 2019 for pre-disaster homeowners such as Defendant.  FEMA has determined that with respect to the 2017 wildfires, extraordinary circumstances

COMPLAINT                                          4

1  no longer exist and that FEMA's continuing temporary direct housing would not serve the public

2  interest.  Therefore, the THU program's period of assistance ended on July 10, 2019.  Accordingly, as

3  discussed in further detail below, Defendant received several notices that she was required to return the

4  THU by July 10, 2019.

5  **The THU Provided by FEMA and the Related Agreement**

6  25.  The THU loaned to Defendant was a vehicle and was marked with a unique Vehicle

7  Identification Number ("VIN").

8  26.  FEMA issued to Defendant a THU with VIN FMT410MN1750595AAC.

9  27.  To obtain the THU, Defendant signed a written document entitled "Manufactured

10  Housing Unit Revocable License and Receipt for Government Property" (the "Revocable License").

11  28.  A true and correct copy of the Revocable License signed by Defendant is attached hereto

12  as Exhibit 1.

13  29.  In the Revocable License, Defendant acknowledged that FEMA provided the THU

14  pursuant to the disaster declaration and that the assistance was "temporary" and for her "household's use

15  only." (Ex. 1 at 1.)  Defendant further acknowledged that she was "NOT A TENANT" and was

16  "granted use of [the THU] because [her] pre-disaster primary residence is unavailable due to damage

17  from a Federally-declared disaster." (*Id.* at 3.)

18  30.  The Revocable License granted Defendant a license to the THU that would

19  "automatically expire 18 months from the date of the President's declaration of a major disaster or

20  emergency or at the end of any extension to the 18-month period of assistance granted under 42 U.S.C.

21  § 5174(c)(1)(B)(iii)." (*Id.* at 1.)  FEMA could revoke the Revocable License at "any time" by serving

22  Defendant with a written Notice of Revocation.  (*Id.* at 4.)  Upon receipt of the Notice of Revocation,

23  Defendant's household was required to "vacate and surrender possession of the unit, remove all personal

24  property, and return the unit's keys to the U.S. Government no later than the date set forth in the Notice

25  of Revocation." (*Id.*)  FEMA further reserved its "right to take possession of the unit when FEMA

26  determines that repossession of the unit [was] warranted." (*Id.*)

27  31.  Defendant was required to "establish and work towards a realistic permanent housing

28  plan" and to "obtain and occupy adequate alternate housing at the earliest possible time." (*Id.*)

COMPLAINT                                    5

32.     The Revocable License specified which users in Defendant's household were authorized to use the THU, namely, Defendant and Defendant's family member.  (*Id.* at 1.)  Upon information and belief, Defendant's family member has since passed away.

**FEMA Termination Notices; Defendant's Failure To Return the THU**

33.     On June 7, 2019, FEMA provided Defendant with a Notice of Revocation.  The Notice of Revocation informed Defendant that she must surrender possession of the THU no later than July 10, 2019, or face legal or other action by FEMA.  A true and correct copy of the Notice of Revocation, along with Defendant's receipt of the Notice, is attached hereto as Exhibit 2.

34.     On July 10, 2019, FEMA provided Defendant with a Notice to Surrender Possession of the THU.  The Notice to Surrender Possession reiterated that Defendant needed to surrender possession of the THU as of July 10, 2019.  A true and correct copy of the Notice to Surrender Possession, along with Defendant's receipt of the Notice, is attached hereto as Exhibit 3.  Defendant did not surrender possession of the THU by July 10, 2019.

35.     On October 15, 2019, pursuant to a referral by FEMA, the U.S. Attorney's Office for the Northern District of California ("USAO") sent Defendant a letter requesting that she contact the U.S. Attorney's Office no later than October 31, 2019, and requesting that she surrender possession of the THU by November 15, 2019.  A true and correct copy of the October 15, 2019 letter is attached hereto as Exhibit 4.

36.     On October 28, 2019, FEMA again provided Defendant with a Notice to Surrender Possession of the THU.  The Notice to Surrender Possession stated, again, that Defendant needed to surrender possession of the THU as of July 10, 2019.  A true and correct copy of the second Notice to Surrender Possession, along with Defendant's receipt of the Notice, is attached hereto as Exhibit 5.

37.     In or about November 2019, Defendant was provided an alternative housing trailer from a non-profit organization.  However, Defendant did not move into the new trailer available to her, and instead continued to reside in the FEMA THU, allowing other family members to reside in the alternative trailer instead.

38.     Upon learning of this information, the USAO contacted Defendant to confirm that she intended to relinquish the FEMA THU, now that she had alternative housing.  Defendant indicated that

1  she needed to house family members in the alternative trailer because downed trees were threatening the

2  housing of those family members.  She confirmed, however, that she would move out of the FEMA

3  THU by December 30.  The USAO requested by letter dated December 10, 2019, that Defendant inform

4  the USAO as soon as she moved out of the FEMA THU, so that FEMA could schedule a move-out

5  inspection.  A true and correct copy of the December 10, 2019 letter is attached hereto as Exhibit 6.

6        39.    FEMA confirmed on January 3, 2020 that Defendant had not vacated and surrendered

7  possession of the THU.  Since the December 10 letter, Defendant has not contacted the USAO or FEMA

8  to inform the Government that she has moved out of the FEMA THU, or provided a date by which she

9  intends to move out of the FEMA THU.

10        40.    In sum, Defendant, despite the termination or expiry of her right to use or possess the

11  THU and the notices described above, has failed to surrender possession of the THU to FEMA.

12        41.    Defendant has refused to honor the terms of the Revocable License.

13        42.    Of the persons affected by the 2017 wildfire to whom FEMA provided a THU as

14  temporary housing assistance, Defendant is the only one who has not relinquished possession to FEMA.

15        43.    Additionally, a FEMA representative observed an unauthorized third party in the THU on

16  at least three separate occasions.  On November 4, 2019, FEMA posted a notice to the door of the THU

17  informing any occupant other than Defendant that the occupant was not authorized or permitted by

18  FEMA to occupy the THU, and further informing the occupant that Defendant's license to the THU had

19  been revoked.

20        44.    In addition to the FEMA THU, Defendant has received in excess of $30,000.00 for home

21  repairs from FEMA.

22  **COUNT I**<br>**Declaratory Judgment**

23

24        45.    The United States re-alleges each fact asserted in the numbered paragraphs above.

25        46.    In pertinent part, the Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides, "In a case

26  of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an

27  appropriate pleading, may declare the rights and other legal relations of any interested party seeking

28

COMPLAINT              7

1  such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the

2  force and effect of a final judgment or decree and shall be reviewable as such."

3      47.  As detailed above, Defendant's right to occupy the THU has already terminated and

4  FEMA has provided her with the notice required by FEMA regulations of the termination of such rights.

5  Upon receipt of such notice, Defendant's household was required to "vacate and surrender possession of

6  the [THU], remove all personal property, and return the unit's keys to the U.S. Government no later than

7  the date set forth" in the notice.

8      48.  Nevertheless, as detailed above, Defendant has failed to relinquish possession to FEMA

9  of the THU.

10      49.  FEMA's decision to terminate or to permit the expiry of Defendant's right to possess the

11  THU constitutes "the exercise or performance of . . . a discretionary function or duty on the part of a

12  Federal agency or an employee of the Federal Government in carrying out the provisions of" the

13  Stafford Act.  42 U.S.C. § 5148.

14      50.  FEMA's exercise of its discretionary functions relating to the termination or expiry of

15  Defendant's right to possess the THU is not subject to judicial review.

16      51.  To any extent the Revocable License provides insufficient detail about the return of the

17  THU to FEMA, federal law governs this question.  Article 2A of the Uniform Commercial Code (the

18  "UCC") should be used as an interstitial source of Federal law concerning FEMA's THU-related rights.

19  Article 2A has been adopted by California and codified in the California Commercial Code.

20      52.  UCC Article 2A "applies to any transaction, regardless of form, that creates a lease."

21  UCC § 2A-102.

22      53.  Article 2A defines "[l]ease" as "a transfer of the right to possession and use of goods for

23  a term in return for consideration," and "goods" as "all things that are movable at the time of

24  identification to a lease contract or that are fixtures . . . but the term does not include money, documents,

25  instruments, accounts, chattel paper, general intangibles, or minerals or the like, including oil and gas,

26  before extraction."  UCC § 2A-103(j), (h).

27      54.  For UCC Article 2A purposes, the THU qualifies as "goods," as it was movable at the

28  time of the Revocable License.

COMPLAINT             8

55.     Under the 2003 amendment to Article 2A of the UCC, "If the lessee . . . repudiates with respect to a part or the whole, then, with respect to any goods involved, . . . the lessee is in default under the lease contract . . . ."  UCC § 2A-523(1).

56.     Here, because Defendant has refused to perform the terms of the Revocable License that require her, upon notice, to vacate and return possession of the THU, she has repudiated it, and pursuant to the UCC, FEMA may "(c) . . . take possession of goods previously delivered" and "(f) exercise any other rights or pursue any other remedies provided in the lease contract."  UCC § 2A-523(1).

57.     Moreover, under UCC § 2A-523(3), if the lessee has not affirmatively repudiated the Revocable License, but "is otherwise in default . . . , the lessor may exercise the rights and pursue the remedies provided in the lease contract . . . ."

58.     In pertinent part, section UCC § 2A-525(2), entitled "Lessor's Right to Possession of Goods," provides, "After a default by the lessee under the lease contract of the type described in Section 2A-523(1) or 2A-523(3)(a) or, if agreed, after other default by the lessee, the lessor has the right to take possession of the goods."  (Emphasis added).

59.     Moreover, in doing so, UCC § 2A-525(3) provides, "[t]he lessor may proceed . . . without judicial process if it can be done without breach of the peace . . . ."

60.     Here, rather than risk a breach of the peace in self-help repossession, the United States brings this action to seek a judicial determination of its right to possess the THU.

61.     The United States is entitled to a judgment declaring that on and after July 10, 2019, Defendant has lacked and continues to lack any right to continued use or possession of the THU, and that Defendant must surrender possession of the THU to FEMA.

## COUNT II
### Injunctive Relief

62.     The United States re-alleges each fact asserted in the numbered paragraphs above.

63.     In pertinent part, the Declaratory Judgment Act, 28 U.S.C. § 2202 ("Section 2202"), provides, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

COMPLAINT                                        9

64.     A declaratory judgment can be used as a predicate to further relief under Section 2202, including an injunction.

65.     The United States is entitled to an order enjoining Defendant to surrender possession of the THU to FEMA.

**COUNT III**
**Writs of Replevin and Assistance**

66.     The United States re-alleges each fact asserted in the numbered paragraphs above.

67.     Rule 64(a) of the Federal Rules of Civil Procedure provides, "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing . . . property to secure satisfaction of the potential judgment."

68.     Rule 64(b) specifically names among such remedies those of "replevin . . . and . . . other corresponding or equivalent remedies" "however designated and regardless of whether state procedure requires an independent action . . . ."

69.     Further, Rule 70(a) of the Federal Rules of Civil Procedure provides, "If a judgment requires a party . . . to perform any . . . specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court."

70.     In addition, Rule 70(d) of the Federal Rules of Civil Procedure provides for issuance of a writ of "execution or assistance."

71.     Under Rule 70, district courts thus may issue writs of assistance in aid of judgments ordering delivery of possession of property.

72.     If an injunction is entered requiring Defendant to return to FEMA's possession the THU issued to her, to any extent Defendant fails timely to comply, the United States is entitled to a writ of replevin, a writ of assistance, or both, directing a person appointed by the Court to seize the THU and to deliver possession of it to FEMA.

**COUNT IV**
**Relief Pursuant to the All Writs Act**

73.     The United States re-alleges each fact asserted in the numbered paragraphs above.

74.     The All Writs Act, 28 U.S.C. § 1651, empowers "all courts established by Act of Congress . . . [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

75.     Federal courts thus may issue injunctions to protect or effectuate their judgments, and may do so even to third parties who are in a position to frustrate a court's administration of its jurisdiction.

76.     Orders under the All Writs Act may appropriately be directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.

77.     To preserve and protect a judgment that the United States is entitled to possession of particular property, a district court properly may issue an order requiring the delivery of such property to the United States and prohibiting persons from interfering with the government's possession of such property.

78.     If an injunction is entered requiring Defendant to return to FEMA's possession the THU issued to her, to any extent Defendant fails timely to comply and other measures do not result in the prompt return to FEMA's possession of the THU issued to Defendant, or to any extent any third party interferes with the return to FEMA's possession of the THU, the United States is entitled to an order under the All Writs Act directing any person from interfering with the return of the THU to FEMA's possession.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court grant to the United States:

A.     against Defendant, a judgment under 28 U.S.C. § 2201 declaring that on and after July 10, 2019, Defendant has lacked and continues to lack any right to continued use or possession of the THU, and that Defendant must surrender possession of the THU to FEMA;

B.     against Defendant, an order under 28 U.S.C. § 2202 enjoining her to vacate the THU and to deliver or surrender possession of it to FEMA by the thirtieth calendar day immediately following issuance of the declaratory relief described in subparagraph A of this Prayer for Relief;

COMPLAINT                                    11

1       C.     to any extent Defendant fails timely to comply with the injunction described in subparagraph B of this Prayer for Relief, a writ of replevin under Fed. R. Civ. P. 64, a writ of assistance under Fed. R. Civ. P. 70, or both, directing a person appointed by the Court to seize the THU in Defendant's possession and to deliver it to FEMA;

D.     to any extent the foregoing relief does not result in the return of the THU to FEMA's possession by the sixtieth day after issuance of the injunction described in subparagraph B of this Prayer for Relief, an order under the All Writs Act requiring the delivery of the THU to the United States and prohibiting all persons from interfering with government's possession of such property; and

E.     such further relief favoring the United States as this Court deems just and appropriate.

Dated: January 13, 2020
San Francisco, California

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_/s/ Sharanya Mohan_
SHARANYA MOHAN
Assistant United States Attorney
Attorney for the United States of
America

# Exhibit  1

DEPARTMENT OF HOMELAND SECURITY
FEDERAL EMERGENCY MANAGEMENT AGENCY
**DIRECT TEMPORARY HOUSING PROGRAM**
**Manufactured Housing Unit Revocable License and Receipt for**
**Government Property (Revocable License)**

*OMB 1660-0002*
*Expires on July 31, 2017*
FEMA DR NUMBER 4344

## PAPERWORK BURDEN DISCLOSURE NOTICE

Public reporting burden for this data collection is estimated to average 15 minutes per response. The burden estimate includes the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and submitting this form. This collection of information is required to obtain or retain benefits. You are not required to respond to this collection of information unless a valid OMB control number is displayed on this form. Send comments regarding the accuracy of the burden estimate and any suggestions for reducing the burden to: Information Collections Management, Department of Homeland Security, Federal Emergency Management Agency, 500 C Street, SW, Washington, DC 20472-3100, Paperwork Reduction Project (1660-0002). **NOTE: Do not send your completed form to this address.**

## PRIVACY ACT STATEMENT

**AUTHORITY:** The Robert T. Stafford Disaster Relief and Emergency Assistance Act as amended, 42 U.S.C. § 5121-5207 and Reorganization Plan No. 3 of 1978; 4 U.S.C. §§ 2904 and 2906; 4 C.F.R. § 206.2(a)(27); the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub. L. 104-193) and Executive Order 13411. DHS asks for your SSN pursuant to the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3325(d) and § 7701(c)(1).

**PRINCIPAL PURPOSE(S):** This information is being collected for the primary purpose of determining eligibility and administrating temporary housing assistance under a Presidentially-declared disaster. Additionally, information may be reviewed internally within FEMA for quality control purposes.

**ROUTINE USE(S):** The information on this form may be disclosed as generally permitted under 5 U.S.C. § 552a(b) of the Privacy Act of 1974, as amended. This includes using this information as necessary and authorized by routine uses published in DHS/FEMA-008 Disaster Recovery Assistance Files System of Records, 78 Fed. Reg. 25,282 and upon written request, by agreement, or as required by law.

**DISCLOSURE:** The disclosure of information on this form is voluntary; however, failure to provide the information requested may delay or prevent the individual from receiving disaster assistance.

| FEMA Application Number<br>**39-8904023** | Date of Declaration<br>**10/10/2017** | | Location (State/County)<br>**CA/Mendocino (County)** |
|---|---|---|---|
| Address of Property<br>**4211 JENKINS RD , REDWOOD VALLEY  CA  95470 9755** | Lot Number | VIN<br>**FMT410MN1750595AAC** | Bar Code Number<br>**2068174** |

### DESCRIPTION OF PROPERTY

| | | |
|---|---|---|
| ■ Manufactured Housing Unit | ■ Furnished | Number of bedrooms   1 |
| ☐ Park Model | ☐ Other (Specify) _____ | Number of bathrooms   0 |

### AUTHORIZED USERS IN HOUSEHOLD

| Name | Relationship to Applicant | Age | Sex |
|---|---|---|---|
| VINSON, DEBBY | Registrant | 56 | |
| VINSON, PENNY | Immed Family | 60 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I acknowledge that FEMA is permitting me, as the Licensee, to use the above manufactured housing unit for direct temporary housing because: the President has declared a major disaster or emergency in my state; I am not able to live in my household's pre-disaster primary residence or obtain adequate alternate housing through no fault of my own due to this event; and FEMA has determined my household to be eligible for direct temporary housing assistance under Section 408 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5174(c)(1)(B) and FEMA regulations at 44 C.F.R. §§ 206.110-118. If not revoked earlier, this license will automatically expire 18 months from the date of the President's declaration of a major disaster or emergency or at the end of any extension to the 18-month period of assistance granted under 42 U.S.C. § 5174(c)(1)(B)(iii).

I acknowledge receiving keys to the above-described unit as temporary housing for my household's use only.

Initials of Licensee: 

**DIRECT TEMPORARY HOUSING PROGRAM**
**Manufactured Housing Unit Revocable License and Receipt for**
**Government Property (Revocable License)**

---

<u>**REVOCABLE LICENSE TERMS AND FEMA REGULATIONS & POLICIES**</u>

**Licensee Compliance.** Maintaining this Revocable License to use the unit is based on the Licensee remaining eligible for continued FEMA temporary housing assistance and complying with the **Individuals and Households Program Conditions for Use of Government Property, attached as Appendix A** to this Revocable License, and any other rules provided and incorporated in this Revocable License.

Failure to comply will require the Licensees household to vacate this unit and return the unit's keys to FEMA no later than the date set forth in a written Notice of Revocation (generally within 15 days of the Notice or less than 15 days when the violation poses a health or safety hazard).

**WHEN SERVED WITH A NOTICE OF REVOCATION OR NOTICE TO SURRENDER POSSESSION, THE LICENSEE'S HOUSEHOLD MUST COMPLY OR FACE POTENTIAL LEGAL ACTION INITIATED BY FEMA.**

**Penalty Fee.** As authorized in 44 C.F.R. § 206.117(b)(1)(ii)(G) and (H), FEMA may revoke this license before the period of assistance ends; and if the Licensee's household still occupies or maintains the possession of the unit after the license to occupy the unit is revoked or after the initial 18-month or extended period of direct housing assistance ends, FEMA will charge a penalty fee. FEMA will provide notice of any penalty fee imposed upon the Licensee, including any interest and administrative costs. These costs will be charged to the Licensee each month until the household vacates and surrenders possession of the unit, removes all personal property, and returns the keys to FEMA.

**Damage Fee.** As authorized in 44 C.F.R. § 206.117(b)(1)(ii)(H), FEMA may charge the Licensee for the cost of damage to the unit beyond normal wear and tear that results from a violation of any terms, rules, or conditions provided and incorporated in this Revocable License.

**Rent.** As authorized in 42 U.S.C. § 5174(c)(1)(B)(iii) and (iv) and 44 C.F.R. § 206.110(e) and § 206.117(b)(1)(ii)(F), FEMA may extend temporary housing assistance for 4344 beyond _____. If the period of assistance is extended, FEMA will charge the Licensee rent each month until the Licensee's household surrenders possession of the unit; and this license will automatically be extended on the same terms to the end of the period of assistance, unless it is revoked by FEMA. FEMA will provide the Licensee notice of the rent amount and extended time period for the temporary housing program.

Initials of Licensee: 

---

**DIRECT TEMPORARY HOUSING PROGRAM**
**Manufactured Housing Unit Revocable License and Receipt for**
**Government Property (Revocable License)**

## HOLD HARMLESS AGREEMENT

I hereby release, discharge, and waive any action, either legal or equitable, that might arise out of any activities on the premises of the unit or the surrounding area. I agree to hold harmless the U.S. Government and any of its agencies, agents, contractors, and subcontractors, for damages of any type whatsoever either to property or persons resulting from its furnishing of temporary housing assistance to my household.

## ACKNOWLEDGEMENT

I acknowledge that I AM NOT A TENANT and have been granted use of this government property through a Revocable License to use government property for temporary housing because my pre-disaster primary residence is unavailable due to damage from a Federally-**declared** disaster. As the Licensee, I agree to comply with any written Notice of Revocation requiring me to vacate and surrender possession of the unit, remove all personal property, and return the unit's keys to FEMA no later than the date established in the Notice.

I acknowledge that FEMA will impose a MONTHLY PENALTY FEE against me, the Licensee, until the unit is returned to FEMA if:

(1) this license is revoked by FEMA for any reason (e.g., if my household is determined ineligible for continued FEMA temporary housing assistance or my household violates the terms and conditions of this license or other rules of the site where the unit is located);

(2) FEMA decides to terminate the housing program for this location; or

(3) my household remains in the unit after the conclusion of the initial 18-month or extended period of assistance for 4344 on

The rules and procedures governing such Federal disaster assistance are set forth in the Robert T. Stafford Disaster Relief and Emergency Assistance Act, P.L. 93-288, codified at 42 U.S.C. §§ 5121-5207, and at 44 CFR Part 206.

By signing this agreement I, the Licensee, have read the **Revocable License and Receipt for Government Property** and the attached **Individuals and Households Program Conditions for Use of Government Property** in their entirety, and acknowledge and agree to comply with the requirements stated herein. As the Licensee, I am signing this form on behalf of all members of my household listed above as Authorized Users. All Authorized Users are responsible for complying with the attached Conditions for Use and any other rules incorporated in this Revocable License.

| | |
|---|---|
| _____ | 6-18-18 |
| Signature of Applicant or Co-Applicant, Licensee | Date |
| _____ | 6-18-18 |
| Witness | Date |

Initials of Licensee:

DIRECT TEMPORARY HOUSING PROGRAM

Appendix A

## OWNERSHIP/CONTROL

The U.S. Government owns the manufactured housing unit described in this **Revocable License and Receipt for Government Property.** The unit is government property, and the U.S. Government retains the right to control its use at all times. This includes the right to revoke this license to occupy the unit with written notice and take possession of the unit, as well as the right to enter the unit to make inspections or repairs within 24 hours-notice (no prior notice is required in an emergency as determined by FEMA). FEMA is providing the unit as a discretionary benefit under 42 U.S.C. § 5174 and 44 C.F.R. §§ 206.110-118 and at any time the Licensee may be given a written Notice of Revocation requiring the Licensee's household to vacate and surrender possession of the unit, remove all personal property, and return the unit's keys to the U.S. Government no later than the date set forth in the Notice of Revocation (generally within 15 days of the Notice or less than 15 days when the violation poses a health or safety hazard). FEMA reserves the right to take possession of the unit when FEMA determines that repossession of the unit is warranted.

## DUTY TO MEET CONTINUING ELIGIBILITY REQUIREMENTS

FEMA requires all recipients of temporary housing assistance to provide documentation showing that they are making diligent efforts to obtain permanent housing and to obey all applicable Federal, State, and local laws while occupying a FEMA manufactured housing unit. FEMA requires the Licensee to establish and work towards a realistic permanent housing plan. Eligibility requirements for and regulations governing temporary housing assistance are set forth at 44 C.F.R. §§ 206.110-118. If FEMA determines these requirements have not been met, the license to occupy the unit will be revoked and a written Notice of Revocation will be issued requiring the Licensee's household to vacate and surrender possession of the unit, remove all personal property, and return the unit's keys to FEMA no later than the date established in the Notice of Revocation.

FEMA may revoke this license to occupy the unit and charge the Licensee a monthly penalty fee for reasons that include, but are not limited to, FEMA determining that:

- The period of assistance has expired: For 4344 the period of assistance will expire on _____

- Adequate alternate housing is available to the household;

- The household obtained temporary housing assistance through either misrepresentation or fraud;

- The household has failed to comply with any term of the **Individuals and Households Program Conditions for Use of Government Property** or other rules of the site where the unit is located;

- The Licensee has not provided verifiable evidence documenting that the household is diligently working towards a permanent housing plan;

- The household has caused damage to the unit beyond normal wear and tear; or

- The household has engaged in criminal activity, activities that create serious health and safety risks, or any other unlawful or otherwise illegal activities.

## DUTY TO OBTAIN/ACCEPT ALTERNATE HOUSING

FEMA requires all recipients of temporary housing assistance to obtain and occupy adequate alternate housing at the earliest possible time. The Licensee will establish a permanent housing plan and make every effort to obtain permanent housing for the Licensee's household as soon as possible. If FEMA determines that adequate alternate housing is available, the Licensee will obtain alternate housing and vacate and surrender possession of the unit as soon as possible. Refusal to accept adequate alternate housing resources offered by FEMA can result in revocation of this license to occupy the unit. If FEMA determines that the Licensee has failed to diligently seek and obtain adequate alternate housing or to accept such housing resources presented, a written Notice of Revocation will be issued requiring the Licensee's household to vacate and surrender possession of the unit, remove all personal property, and return the unit's keys within the timeframe established in the Notice of Revocation.

## DUTY TO COOPERATE WITH FEDERAL REPRESENTATIVES

A FEMA representative will contact the Licensee or other Authorized User to schedule regular appointments to review the Licensee's eligibility to continue occupying the unit and to assist in establishing a realistic permanent housing plan. The Licensee must cooperate with FEMA representatives. This includes making the Licensee or other Authorized User available for regularly scheduled appointments, at which time the Licensee or other Authorized User will be expected to provide documentation, allow access to the unit and to the pre-disaster residence, if applicable, in order to demonstrate that progress is being made towards achieving a permanent housing plan and eligibility requirements for continued temporary housing assistance are being met. Failure to demonstrate progress on a permanent housing plan or to meet eligibility requirements will result in the revocation of this license to occupy the unit.

Initials of Licensee: _____

## DIRECT TEMPORARY HOUSING PROGRAM
### Appendix A

### Individuals and Households Program Conditions for Use of Government Property

#### DUTY TO COMPLY WITH ENFORCEMENT OR REMOVAL ACTION

The Licensee and the Authorized Users will comply with any written Notice of Revocation requiring the Licensee's household to vacate the unit by moving out and surrendering possession of the unit, removing all personal property, and returning the unit's keys to FEMA no later than the date set forth in the Notice of Revocation. The Licensee is responsible for the household's personal property, which is placed in the unit at the sole risk of the Licensee, and for removing it from the unit upon receiving a written Notice of Revocation. FEMA may take steps to take possession of the unit and remove all Authorized Users and personal property from the unit using any enforcement authorities deemed appropriate, upon failure to comply with the date established in the Notice of Revocation. **The Licensee agrees to hold harmless the U.S. Government and all of its agencies, agents, contractors, and subcontractors, for damage of any type whatsoever either to property or persons resulting from such enforcement actions.**

#### DUTY OF INSURED APPLICANTS TO REIMBURSE FEMA

FEMA requires all recipients of temporary housing assistance under its temporary housing assistance program to offset the value of the direct assistance provided by FEMA against any insurance proceeds or recoveries they receive for the provision of temporary housing. If the Licensee's household is eligible for any payments or allowances from private insurance that can be used for temporary housing needs, such as Additional Living Expenses, the Licensee or other Authorized User will file a claim for such insurance benefits and pay FEMA for the cost (up to Fair Market Rent) of using the unit (as determined by FEMA) up to the limits of the insurance recovery for monthly housing expenses. ·

#### DUTY TO PAY PENALTY FEES

Penalty Fees may include any fees deemed appropriate by FEMA for failing to vacate and surrender possession of the unit, remove all personal property, and return the keys to FEMA by the date set forth in a written Notice of Revocation, plus administrative costs, interest, and legal fees associated with enforcement actions to remove my household from the unit. The Licensee shall pay FEMA for any fees imposed for a violation of any of the rules set forth in the **Individuals and Households Program Conditions for Use of Government Property** or other rules of the site where the unit is located.

#### DUTY AS TO USE OF HOUSING UNIT

A. Pay all utility charges, including deposits, for the manufactured housing unit, if applicable.

B. Keep the unit, any furnishings, and the surrounding area in a clean and orderly condition, less ordinary wear and tear, and assure that items or debris of any kind which may cause a possible fire hazard are not placed near the unit.

C. Notify FEMA when any damage or defect is found in the unit.

D. Refrain from making any major repairs, additions, structural alterations, or changes to the unit and any furnishings.

E. Obtain FEMA's prior written consent if there is a need to restrict the ingress and egress route on a temporary or permanent basis.

F. Obtain FEMA's prior written consent for any changes to the area surrounding the unit. FEMA's consent, however, is not required for altering the surrounding area on private property when the property owner is the unit's Authorized User or when the private property owner's prior written consent has been obtained.

G. Keep the unit in the location where FEMA has placed it.

H. Provide FEMA a right of entry signed by the landowner for any private property site to allow FEMA onto the property for inspections, repairs, or removal of the unit.

I. Affirm that the Licensee understands that the unit is government property and cannot be subject to any lien or obligation of the Licensee or Licensee's household.

J. Obtain FEMA's prior written consent if there is a need to install any security system, or otherwise impede FEMA's access to the unit.

K. Occupy the unit with only those persons named in this license. The Licensee must notify FEMA in writing within seven (7) days if there is a change in Users.

Initials of Licensee: _____

**DIRECT TEMPORARY HOUSING PROGRAM**
**Appendix A**

---

### Individuals and Households Program Conditions for Use of Government Property

L. Not transfer or assign this license to any person except to another Authorized Users listed above, with FEMA's consent.

M. Use the unit continuously as housing and notify FEMA immediately in writing if leaving the unit for any period of time greater than 15 consecutive calendar days. Schedule any FEMA appointments for a date and time prior to the Licensee's planned absence from the unit of greater than 15 days.

N. Not engage in any illegal/criminal behavior or allow any illegal/criminal behavior to occur in the housing unit or the surrounding area.

O. Respect the rights and privacy of other individuals in any group site or commercial park, which includes not causing or permitting any disturbing noises, any objectionable or improper conduct, or any dangerous activities.

P. Comply with all rules for a group site or commercial park AND comply with all relevant local ordinances.

**Q. Pet Policy (Subject to further restrictions as required by relevant local ordinances):**

    - Each household may own up to two domesticated indoor pets.

    - An animal that displays vicious or dangerous behavior is not allowed.

    - Pets must have current shots and ID tag at all times.

    - Pets must be leashed when outside the unit and may not be left outside unattended.

    - No outdoor pet kennels or pens are allowed at group or commercial-park sites.

    - The Licensee and other Authorized User are responsible for picking up and properly disposing of pet droppings.

R. Prohibition on Use of Flammable Products:

    - All outdoor cooking, fires and fire hazards are prohibited, including, but not limited to: grills, smokers, open pit fires, fireworks, propane tanks, and storage of combustible liquids, solids, or gasses inside or outside the unit.

Initials of Licensee: 

---

# Exhibit  2

30-Day Notice of Revocation
End of Period of Assistance and Penalty Fee

 **FEMA**

U.S. Department of Homeland Security
**FEDERAL EMERGENCY MANAGEMENT AGENCY**

**Receipt for 30-Day Notice of Revocation: End of Period of Assistance and Penalty Fee**

**Address of Property and Name of Authorized Occupant:**

Name                Debby Vinson

Mailing Address     4211 Jenkins Rd
                    Redwood Valley, CA 95470

**Acknowledgement**: I hereby acknowledge that I have read and that I understand the terms of
this Notice of Revocation, and that I understand and agree that any failure to comply with this
Notice may result in the assessment of penalty fee
and legal action.

**Certification:** I certify that I received a copy of this Notice of Revocation for my records.

_____          _Debby Vinson_____
Occupant's Signature                  Print Name

___6 - 7 - 19_____            ___9:00am_____
Date                                  Time

**FEMA Representative/Agent:** I certify that a copy of this Notice of Revocation was hand
delivered to Debby Vinson on _6-7-19_

_C Fernandez_____             _C Fernandez_____
FEMA Representative's Signature       Print Name

___6-7-19_____             ___9:00am_____
Date                                  Time

NOTES ON DELIVERY/RECEIPT/ACKNOWLEDGEMENT: _____
_____
_____

 FEMA

**30-DAY NOTICE OF REVOCATION**
**END OF PERIOD OF ASSISTANCE AND PENALTY FEE**

DR-4344-CA

June 10, 2019

Debby Vinson
4211 Jenkins Rd
Redwood Valley, CA 95470
FEMA Application #: 398904023

Dear Ms. Vinson:

As part of the Federal Emergency Management Agency's (FEMA) mission to help you recover from DR-4344-CA, the Agency provided your household with a temporary housing unit (THU), subject to the rules and conditions of the "*Receipt for Government Property (Temporary Housing Program § 408) with Conditions for Use of Government Property*" (the "Revocable License"), which you signed on April 5, 2018.  If not revoked earlier, the Revocable License is valid for the length of FEMA's direct housing program, but automatically expires 18 months from the date of the Presidential disaster declaration, unless extended.

You received a reminder that the period of assistance for DR-4344-CA is scheduled to end on July 10, 2019.  **Therefore, you must move out and surrender possession of the THU no later than July 10, 2019.**

If you have not moved out of the THU, removed all personal property, and returned the keys to FEMA by July 10, 2019, you will be assessed a monthly penalty fee, as authorized by 44 CFR Section 206.117(b)(1)(ii)(H).  You will be charged $1365 starting on August 1, 2019 and on the first day of every month for as long as you remain in or maintain possession of the THU.  Your first payment will be due on September 1, 2019.  This penalty fee will not be adjusted or prorated.

FEMA will perform a move-out inspection on July 10, 2019 at 3:00PM to inspect the THU for damage.  If there is any damage other than ordinary wear and tear, you may be required to pay FEMA for this damage.  You may also contact FEMA at (707) 586-7803 to schedule a move-out inspection prior to July 10, 2019.

Payment of the monthly penalty fee does **NOT** entitle you to maintain possession of the THU. You are still required to move out and surrender possession, and if you do not, FEMA may take legal action and other appropriate action to take possession of the THU. See attached "Debt Collection Notice" for additional information.

Please continue to work with your FEMA Recertification Advisor so that you can transition out of the FEMA-provided THU and achieve your permanent housing plan. He/she may be contacted at (707) 586-7802

Respectfully,

MAGDA E DE LA MATTA

Digitally signed by MAGDA E DE LA MATTA
Date: 2019.05.28 21:47:41 -07'00'

Magda de la Matta, Individual Assistance Branch Director
DR-4344-CA

## DEBT COLLECTION NOTICE

You will owe a debt to FEMA if you remain in the THU past the revocation date and you fail to timely pay any charges and/or fees assessed.  Under 31 U.S.C. 3711(a), 31 CFR part 285 and 6 CFR part 11, FEMA may take the following steps to collect any debt you may incur:

A.  If you do not pay the debt in full within 30 days of the date of the bill from FEMA, you may be charged interest at the applicable rate.  FEMA will also charge you administrative fees for the cost of processing and handling your debt.

B.  If you do not pay the debt in full within 90 days of the date of the bill, FEMA may charge additional fees, including any interest and administrative fees.

C.  If you do not pay a debt in full within 120 days of the date of the bill, FEMA may refer your debt to the U.S. Department of Treasury, who may take the following actions to recover the debt:

    i.  Reduce or withhold any of your eligible Federal payments by the amount of your FEMA debt, through the Treasury Offset Program (TOP).  Federal payments include income tax refunds, Federal and Military salary and retirement pay, and certain benefit payments such as Social Security.  The U.S. Department of Treasury will add additional collection fees to the amount of the debt.

    ii.  Report the debt to national credit bureaus and render the debt to private collection agencies, and the Department of Justice for litigation.

    iii.  Match your name and social security number with computer records to identify sources to recover this debt through the methods listed above.

# Exhibit 3


**FEMA**

## Notice to Surrender Possession

U.S. Department of Homeland Security
**FEDERAL EMERGENCY MANAGEMENT AGENCY**

**Receipt for Notice to Surrender Possession**

### Address of Property and Name of Authorized Occupant:

Name          Debby Vinson

Mailing Address    4211 Jenkins Rd
Redwood Valley, CA 95470

**Acknowledgement**:  I hereby acknowledge that I have read and that I understand the terms of this Notice to Surrender Possession, and that I understand and agree that any failure to comply with this Notice may result in the assessment of fees and legal action.

**Certification:**  I certify that I received a copy of this Notice to Surrender Possession for my records.

_____          Debby Vinson
Occupant's Signature                              Print Name

_____7-10-19_____          _____3:25_____
Date                                              Time


**FEMA Representative/Agent:**  I certify that a copy of this Notice to Surrender Possession was hand delivered to Debby Vinson on  7/10/19.

_____          Celina Fernandez
FEMA Representative's Signature                    Print Name

_____7/10/19_____          _____3:25pm_____
Date                                              Time

NOTES ON DELIVERY/RECEIPT/ACKNOWLEDGEMENT: _____
App stated as of today she has no where to go



## NOTICE TO SURRENDER POSSESSION

Disaster-4344-CA

July 10, 2019

Debby Vinson
4211 Jenkins Rd
Redwood Valley, CA 95470
Registration #: 398904023

Dear Ms. Vinson:

You received a Notice of Revocation advising that your Revocable License to use FEMA's temporary housing unit (THU) would end on July 10, 2019.

**This is your final notice that FEMA has revoked your household's Revocable License to use the THU and that you must surrender possession immediately.**

You were also advised that if your household maintained possession of the THU after July 10, 2019, FEMA would assess a monthly penalty fee, as authorized by 44 CFR Section 206.117(b)(1)(ii)(H). Since you maintained possession of the THU, you will be charged $1365 starting on August 1, 2019 and on the first day of every month for as long as you maintain possession of the THU. Your first payment will be due September 1, 2019. This penalty fee will not be adjusted or prorated.

Additionally, FEMA will perform a move-out inspection to inspect the THU for damage. If there is any damage other than ordinary wear and tear, you may be required to pay FEMA for this damage.

**Payment of the monthly penalty fee does NOT entitle you to maintain possession of the THU. You are required to surrender possession, and if you do not, FEMA may take legal action and other appropriate action to take possession of the THU.** See attached "Debt Collection Notice" for additional information.

If you have any questions, please contact your Recertification Advisor at 707-586-7803.

Respectfully,

MAGDA E DE LA MATTA
Digitally signed by MAGDA E DE LA MATTA
Date: 2019.07.10 10:00:14 +10'00'

Magda de la Matta, Individual Assistance Branch Director
DR-4344-CA

## DEBT COLLECTION NOTICE

You will owe a debt to FEMA if you remain in the THU past the revocation date and you fail to timely pay any charges and/or fees assessed. Under 31 U.S.C. 3711(a), 31 CFR part 285 and 6 CFR part 11, FEMA may take the following steps to collect any debt you may incur:

A. If you do not pay the debt in full within 30 days of the date of the bill from FEMA, you may be charged interest at the applicable rate. FEMA will also charge you administrative fees for the cost of processing and handling your debt.

B. If you do not pay the debt in full within 90 days of the date of the bill, FEMA may charge additional fees, including any interest and administrative fees.

C. If you do not pay a debt in full within 120 days of the date of the bill, FEMA may refer your debt to the U.S. Department of Treasury, who may take the following actions to recover the debt:

    i. Reduce or withhold any of your eligible Federal payments by the amount of your FEMA debt, through the Treasury Offset Program (TOP). Federal payments include income tax refunds, Federal and Military salary and retirement pay, and certain benefit payments such as Social Security. The U.S. Department of Treasury will add additional collection fees to the amount of the debt.

    ii. Report the debt to national credit bureaus and render the debt to private collection agencies, and the Department of Justice for litigation.

    iii. Match your name and social security number with computer records to identify sources to recover this debt through the methods listed above.

# Exhibit  4



*United States Attorney*
*Northern District of California*

---

*9th Floor, Federal Building*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*

*(415)436-7198*
*FAX: (415) 436-6748*

October 15, 2019

<u>BY CERTIFIED MAIL</u>
Ms. Debby Vinson
4211 Jenkins Road
Redwood Valley, CA  95470

  Re: Federal Emergency Management Agency's Temporary Housing Unit

Dear Ms. Vinson:

  I am an Assistant United States Attorney with the United States Attorney's Office for the Northern District of California.  I write regarding your continued occupancy of the temporary housing unit ("THU") loaned by the Federal Emergency Management Agency ("FEMA") and to urge your prompt return of the THU.  FEMA has referred this matter to our office.  I write in an effort to resolve this matter before commencing litigation in the United States District Court for the Northern District of California.

  Your right to remain in possession of the THU ended on July 10, 2019.  On June 7, 2019, you received a notice from FEMA reminding you that your period of assistance was scheduled to end by July 10.  On July 10, you received a notice from FEMA advising you that FEMA had revoked your license to the THU and informing you that you and your household must surrender possession of the THU immediately.  The July 10 notice also informed you that FEMA would assess a monthly penalty fee of $1,365 per month if your household continued to maintain possession of the THU after July 10.  To date, you have not surrendered possession of the THU.

  We would like to resolve this matter with you without the need to file a complaint and engage in costly litigation.  However, if you have not returned the THU to FEMA by November 15, I will request authorization to bring a civil action against you to recover the THU.  You should avoid this lawsuit by promptly returning the THU to FEMA.

  Once you have received this letter, please contact me at (415) 436-7198 by no later than October 31, 2019, so that we can discuss your return of the THU.  Thank you for your prompt attention to this matter.

Very truly yours,

DAVID L. ANDERSON
United States Attorney

SHARANYA MOHAN
Assistant United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102-3495
Telephone: (415) 436-7198
Fax: (415) 436-6748
sharanya.mohan@usdoj.gov

# Exhibit  5



**NOTICE TO SURRENDER POSSESSION**

Disaster-4344-CA

October 28 2019

Debby Vinson
4211 Jenkins Rd
Redwood Valley, CA 95470
Registration #: 398904023

Dear Ms. Vinson:

You received a Notice of Revocation advising that your Revocable License to use FEMA's temporary housing unit (THU) would end on July 10, 2019.

**This is your final notice that FEMA has revoked your household's Revocable License to use the THU and that you must surrender possession immediately.**

You were also advised that if your household maintained possession of the THU after July 10, 2019, FEMA would assess a monthly penalty fee, as authorized by 44 CFR Section 206.117(b)(1)(ii)(H).  Since you maintained possession of the THU, you've been charged $1365 starting on August 1, 2019 and on the first day of every month for as long as you maintain possession of the THU.  Your first payment was due September 1, 2019.  This penalty fee will not be adjusted or prorated.

Additionally, FEMA will perform a move-out inspection to inspect the THU for damage on November 1, 2019 .  If there is any damage other than ordinary wear and tear, you may be required to pay FEMA for this damage.

**Payment of the monthly penalty fee does NOT entitle you to maintain possession of the THU.  You are required to surrender possession, and if you do not, FEMA may take legal action and other appropriate action to take possession of the THU.**  See attached "Debt Collection Notice" for additional information.

If you have any questions, please contact your Recertification Advisor at 202-355-5424.

Respectfully,

for _____
Magda de la Matta, Individual Assistance Branch Director
DR-4344-CA

## DEBT COLLECTION NOTICE

You will owe a debt to FEMA if you remain in the THU past the revocation date and you fail to timely pay any charges and/or fees assessed.  Under 31 U.S.C. 3711(a), 31 CFR part 285 and 6 CFR part 11, FEMA may take the following steps to collect any debt you may incur:

A. If you do not pay the debt in full within 30 days of the date of the bill from FEMA, you may be charged interest at the applicable rate.  FEMA will also charge you administrative fees for the cost of processing and handling your debt.

B. If you do not pay the debt in full within 90 days of the date of the bill, FEMA may charge additional fees, including any interest and administrative fees.

C. If you do not pay a debt in full within 120 days of the date of the bill, FEMA may refer your debt to the U.S. Department of Treasury, who may take the following actions to recover the debt:

  i. Reduce or withhold any of your eligible Federal payments by the amount of your FEMA debt, through the Treasury Offset Program (TOP).  Federal payments include income tax refunds, Federal and Military salary and retirement pay, and certain benefit payments such as Social Security.  The U.S. Department of Treasury will add additional collection fees to the amount of the debt.

  ii. Report the debt to national credit bureaus and render the debt to private collection agencies, and the Department of Justice for litigation.

  iii. Match your name and social security number with computer records to identify sources to recover this debt through the methods listed above.



## Notice to Surrender Possession

### U.S. Department of Homeland Security
### FEDERAL EMERGENCY MANAGEMENT AGENCY

#### Receipt for Notice to Surrender Possession

<u>**Address of Property and Name of Authorized Occupant:**</u>

Name                      Debby Vinson

Mailing Address       P.O Box 474
                          Redwood Valley, CA 95470

<u>**Acknowledgement**</u>:  I hereby acknowledge that I have read and that I understand the terms of
this Notice to Surrender Possession, and that I understand and agree that any failure to comply
with this Notice may result in the assessment of fees and legal action.

<u>**Certification:**</u>  I certify that I received a copy of this Notice to Surrender Possession for my
records.

_____            _Debby S. Vinson_
Occupant's Signature                    Print Name

_10/28/19_                                  _2:56_
Date                                          Time

<u>**FEMA Representative/Agent:**</u>  I certify that a copy of this Notice to Surrender Possession was
hand delivered to Debby Vinson on _10/28/19_

_____            _JOHN C. Ellis_
FEMA Representative's Signature        Print Name

_10/28/19_                                 _12:55 P.M._
Date                                          Time

NOTES ON DELIVERY/RECEIPT/ACKNOWLEDGEMENT: _____

_____

_____

# Exhibit  6



*United States Attorney*
*Northern District of California*

9th Floor, Federal Building
450 Golden Gate Ave., Box 36055
San Francisco, CA 94102-3495

(415)436-7198
FAX: (415) 436-6748

December 10, 2019

BY CERTIFIED MAIL AND EMAIL
Ms. Debby Vinson
P.O. Box 474
Redwood Valley, CA 95470
████████████h

     Re:    Federal Emergency Management Agency's Temporary Housing Unit

Dear Ms. Vinson:

     As you are aware, I am an Assistant United States Attorney with the United States Attorney's Office for the Northern District of California. I write regarding your continued occupancy of the temporary housing unit ("THU") loaned by the Federal Emergency Management Agency ("FEMA") and to confirm that, per our conversation of December 5, 2019, you intend to vacate the THU no later than December 30, 2019.

     As both FEMA and this Office have informed you on multiple occasions, your right to remain in possession of the THU ended on July 10, 2019. To date, you have not surrendered possession of the THU. We understand further that you have been provided with alternative housing through Catholic Charities but are, at this time, continuing to occupy the FEMA THU.

     As I informed you by letter dated October 15, FEMA has referred this matter to this Office to take legal action to recover possession of the THU. It is my sincere hope that we can resolve this matter without the need to file a complaint and engage in costly litigation. Please be advised, however, that <u>I now have authority to file a lawsuit against you if you do not vacate the THU by December 30</u>. Please contact me immediately once you have vacated the THU so that FEMA can arrange a move-out inspection.

     Thank you for your prompt attention to this matter.

Very truly yours,

DAVID L. ANDERSON
United States Attorney

SHARANYA MOHAN
Assistant United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102-3495
Telephone: (415) 436-7198
Fax: (415) 436-6748
sharanya.mohan@usdoj.gov